# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

## MEDFORD DIVISION

**UNITED STATES OF AMERICA,**

               Plaintiff,

        v.

**OLUWAMUYIWA ABOLAD
OLAWOYE,**

               Defendant.

No. 1:15-cr-00172-AA-5
No. 1:18-cv-01868-AA

**OPINION & ORDER**

AIKEN, District Judge.

The matter comes before the Court on Defendant Oluwamuyiwa Abolad Olawoye's Motion to Vacate or Correct Sentence pursuant to 28 U.S.C. § 2255. ECF No. 337. For the reasons set forth below, Defendant's motion under § 2255 is DENIED. Because the motion and record conclusively show that Defendant is entitled to no relief, no evidentiary hearing is required.

## BACKGROUND

In May 2015, Olawoye was indicted, along with a number of co-conspirators, for his role in a wide-ranging fraud and identity theft scheme. The conspiracy involved both indicted and unindicted co-conspirators and participants. Olawoye and his codefendants were charged with a single count of Conspiracy to Commit Mail and Wire Fraud (Count 1), seven counts of Mail Fraud (Counts 2-8), six counts of Wire Fraud (Counts 9-14), and thirteen counts of Aggravated Identity Theft (Counts 15-27).

At the time of Olawoye's first appearance, Magistrate Judge Mark Clarke appointed attorney Robert Stone to represent Olawoye. ECF No. 36. On July 6, 2015, Olawoye retained

attorney Jay Frank, who replaced Stone as Olawoye's counsel. ECF No. 59. On September 18, 2015, Frank withdrew as Olawoye's attorney and Stone was re-appointed as counsel for Olawoye. ECF Nos. 83, 85. Over a year later, on January 4, 2017, Olawoye retained Larry Roloff to serve as his attorney. ECF No. 123. Given the complexity of the case and the volume of discovery materials, Roloff sought and received continuances in order to get up to speed on Olawoye's case. ECF Nos. 125, 136.

In July 2017, shortly before trial was set to begin, Olawoye entered into a plea agreement with the Government. ECF No. 201. Pursuant to the plea agreement, Olawoye agreed to plead guilty to Conspiracy to Commit Mail and Wire Fraud (Count 1), Mail Fraud (Count 6), Wire Fraud (Count 11), and three counts of Aggravated Identity Theft (Counts 18, 19, and 24). In exchange, the Government agreed to drop the remaining counts. For purposes of Olawoye's sentencing guidelines, the parties agreed that the base offense level for Count 1 was seven prior to adjustments and that Olawoye would receive a two-level enhancement for more than ten victims and a two-level enhancement for the use of sophisticated means. The Government agreed to recommend a three-level reduction for acceptance of responsibility. The parties also agreed that the amount of loss and the application of any role adjustment would be determined by the Court at the time of sentencing.

As part of his plea agreement, Olawoye agreed to waive the right to appeal from any aspect of his conviction or sentence except for a claim that "(1) the sentence imposed exceeds the statutory maximum, or (2) the Court arrive[d] at an advisory sentencing guideline range by applying an upward departure under the provisions of Guideline Chapter 5K." Olawoye further waived his right to file any collateral attack on his conviction or sentence, including a motion under 28 U.S.C. § 2255, on any grounds other than ineffective assistance of counsel.

On July 24, 2017, Judge Clarke accepted Olawoye's guilty plea pursuant to the plea agreement and ordered that a presentence report ("PSR") be prepared. ECF No. 199. The matter was then referred to this Court for sentencing.

The PSR recommended the same initial base offense level and adjustments for number of victims, use of sophisticated means, and acceptance of responsibility as contemplated by the plea agreement. With respect to the amount of loss, the PSR found that Olawoye was responsible for over $11 million, resulting in a twenty-level increase pursuant to U.S.S.G. § 2B1.1(b)(1)(K). The PSR also noted Olawoye's active role in the conspiracy and listed several instances in which Olawoye had instructed both his co-defendants and unindicted co-conspirators on aspects of the fraud scheme. As a consequence, the PSR recommended a two-level enhancement for Olawoye's leadership role pursuant to U.S.S.G. § 3B1.1(c).

After applying all adjustments, the PSR calculated Olawoye's total offense level as 30, with criminal history category I, yielding an advisory guidelines range of 97 to 121 months. Olawoye was also subject to a mandatory 24-month consecutive sentence for Aggravated Identity Theft pursuant to 18 U.S.C. § 1028A. As sentencing courts are prohibited from reducing the underlying sentence to account for the mandatory consecutive sentence under § 1028A(b), Olawoye faced a total sentence of between 121 and 145 months. Olawoye also faced likely deportation to Nigeria upon completion of his term of incarceration.

Olawoye's sentencing hearing was held on April 30, 2018. ECF No. 265. At the time of sentencing, the Government agreed with the PSR's findings and recommended a low-end sentence of 97 months, combined with the mandatory 24-month consecutive sentence for a total of 121 months. Sentencing Tr., at 11. ECF No. 292. Roloff argued against the imposition of a leadership role enhancement, citing to Olawoye's low-status role within the wider conspiracy and to an expert

psychologist's report on Olawoye's personality. Sentencing Tr. 15-22; Def. Sentencing Mem. ECF No. 342. The Court also heard from Olawoye himself, who described his role in the conspiracy at some length. Sentencing Tr. 28-41, 60-64. In particular, Olawoye objected to any description of himself as a leader or holding a leadership role in the conspiracy. Sentencing Tr. 60-64.

After reviewing the record and hearing from the parties, the Court determined that Olawoye's total offense level was 30, which included a two-level enhancement for a leadership role. Sentencing Tr. 54. After reviewing the factors laid out in 18 U.S.C. § 3553(a), the Court departed downward from Olawoye's guidelines range and imposed a sentence of 84 months on Counts 1, 6, and 11, with a consecutive sentence of 24 months for Counts 18, 19, and 24. Sentencing Tr. 56-57. In total, Olawoye was sentenced to 108 months, followed by a three-year term of supervised release and $3,257,025.00 in restitution. ECF No. 301.

On May 9, 2018, Olawoye filed Notices of Appeal on his own behalf. ECF Nos. 269, 270. Roloff withdraw as counsel for Olawoye and the Court appointed appellate counsel to replace him. ECF Nos. 272, 279, 280, 283. On October 5, 2018, Olawoye voluntarily dismissed his appeal. ECF No. 333. The present motion followed.

## LEGAL STANDARDS

Under 28 U.S.C. § 2255, a federal prisoner in custody under sentence may move the court that imposed the sentence to vacate, set aside, or correct the sentence on the ground that:

> [T]he sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack. . . .

28 U.S.C. § 2255(a).

To warrant relief, a petitioner must demonstrate that the error of constitutional magnitude had a substantial and injurious effect or influence on the guilty plea or the jury's verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *see also United States v. Montalvo*, 331 F.3d 1052, 1058 (9th Cir. 2003) ("We hold now that *Brecht*'s harmless error standard applies to habeas cases under section 2255, just as it does to those under section 2254.").

Under § 2255, "a district court must grant a hearing to determine the validity of a petition brought under that section, '[u]nless the motions and the files and records of the case *conclusively show* that the prisoner is entitled to no relief.'" *United States v. Blaylock*, 20 F.3d 1458, 1465 (9th Cir. 1994) (alteration and emphasis in original) (quoting 28 U.S.C. § 2255). In determining whether a § 2255 motion requires a hearing, "[t]he standard essentially is whether the movant has made specific factual allegations that, if true, state a claim on which relief could be granted." *United States v. Withers*, 638 F.3d 1055, 1062 (9th Cir. 2011) (alteration in original, internal quotation marks and citation omitted). A district court may dismiss a § 2255 motion based on a facial review of the record "only if the allegations in the motion, when viewed against the record, do not give rise to a claim for relief or are 'palpably incredible or patently frivolous.'" *Id.* at 1062-63 (quoting *United States v. Schaflander*, 743 F.2d 714, 717 (9th Cir. 1984)); *see United States v. Hearst*, 638 F.2d 1190, 1194 (9th Cir. 1980). Conclusory statements in a § 2255 motion are insufficient to require a hearing. *Hearst*, 638 F.2d at 1194.

## DISCUSSION

### I.     Procedural Default

Olawoye objects to the Court's application of the sentencing factors under 18 U.S.C. § 3553(a) and the Court's consideration of Olawoye's psychological report at the time of sentencing.

Olawoye argues that the Court violated his due process rights by its consideration of these issues. As these claims were not raised in a direct appeal, they are procedurally defaulted.

Habeas review is not an alternative or substitute for a direct appeal. *Bousley v. United States*, 523 U.S. 614, 621 (1998). Absent a showing of cause and prejudice, a habeas petitioner procedurally defaults all claims that were not raised in his direct appeal, other than claims asserting ineffective assistance of counsel. *Massaro v. United States*, 538 U.S. 500, 504 (2003). "[T]o obtain collateral relief based on trial errors to which no contemporaneous objection was made, a convicted defendant must show both (1) 'cause' excusing his double procedural default, and (2) 'actual prejudice' resulting from the errors of which he complains." *United States v. Frady*, 456 U.S. 152, 167-68 (1982). To demonstrate "cause," the defendant must establish that "some objective factor external to the defense impeded his adherence to the procedural rule." *United States v. Skurdal*, 341 F.3d 921, 925 (9th Cir. 2004) (internal quotation marks and citation omitted). For "prejudice," the defendant must show "not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Frady*, 456 U.S. at 170 (emphasis in original). Courts need not address both prongs if the defendant fails to satisfy one. *Id.* at 168.

In this case, Olawoye filed and then voluntarily dismissed a direct appeal of his sentence with the Ninth Circuit. *United States v. Olawoye*, Ninth Cir. Case No. 18-30103. Olawoye's voluntary dismissal occurred before the filing of his opening brief and so the record does not indicate the precise basis of Olawoye's intended challenge. Even assuming Olawoye's intended to raise the present issues as part of his direct appeal, however, his claims are still subject to procedural default. "A claim has not been 'raised' if the defendant includes the claims in an appeal to the court of appeals but voluntarily dismisses the appeal." *Alvarez-Herrera v. United States*,

Case No. CV 16-05384-BRO, 2017 WL 1097173, at *4 (C.D. Cal. Mar. 23, 2017) (citing *Smith v. Baldwin*, 510 F.3d 1127, 1138 (9th Cir. 2007)).

Olawoye does not demonstrate cause for excusing his procedural default.[1] Nor is Olawoye able to demonstrate prejudice. Contrary to Olawoye's suggestion, his sentence represents a substantial downward departure from Olawoye's guidelines range, which was expressly based on the Court's consideration of the § 3553(a) factors. Sentencing Tr. 55-57. The Court also noted the psychological evaluation submitted by Roloff as part of its consideration of the § 3553(a) factors. Sentencing Tr. 55. Olawoye is clearly dissatisfied with the Court's rulings, but that dissatisfaction does not constitute the necessary showing of an error of constitutional dimensions.[2] The Court therefore finds that Olawoye's claims are procedurally defaulted, except insofar as he alleges ineffective assistance of counsel.

## II. Ineffective Assistance of Counsel

Olawoye seeks to vacate his sentence based on ineffective assistance of counsel. Olawoye asserts that his trial counsel, Larry Roloff, was ineffective for (1) failing to retain the services of a Yoruba interpreter; and (2) for failing to argue for a minor or minimal role in the conspiracy. Courts use a two-part test to determine whether a defendant has received constitutionally deficient assistance of counsel. *Premo v. Moore*, 562 U.S. 115, 121 (2011). Under this test, a defendant must prove that counsel's assistance was deficient and that the deficient performance prejudiced the defense. *Id.*

---

[1] As noted, Olawoye waived his appeal rights as part of his plea agreement with the Government, except in certain limited and presently inapplicable circumstances. In the motion to voluntarily dismiss Olawoye's direct appeal, Olawoye's appellate counsel indicates that "the advisability of proceeding with the appeal in light of the appellate waiver contained in [Olawoye's] plea agreement with the government" was a major factor in the voluntarily dismissal. *United States v. Olawoye*, Ninth Cir. Case No. 18-30103 (dkt. no. 16). The Court also notes that Olawoye waived his right to collaterally attack his conviction or sentence on any grounds other than ineffective assistance of counsel.

[2] Procedural default may also be excused by a showing of actual innocence, *see United States v. Braswell*, 501 F.3d 1147, 1150 (9th Cir. 2007), but Olawoye does not argue, or even suggest, that he is innocent of the offenses.

To prove the deficiency of counsel's performance, the defendant must show counsel made errors so serious that his "'representation fell below an objective standard of reasonableness'" under prevailing professional norms. *Stanley v. Cullen*, 633 F.3d 852, 862 (9th Cir. 2011) (quoting *Strickland v. Washington*, 466 U.S. 668, 688 (1984)). The court must inquire "whether counsel's assistance was reasonable considering all the circumstances" at the time of the assistance. *Strickland*, 466 U.S. at 688.

In assessing whether counsel's performance was deficient, "courts must 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance' and make every effort 'to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.'" *Hibbler v. Benedetti*, 693 F.3d 1140, 1149 (9th Cir. 2012) (quoting *Strickland*, 466 U.S. at 689). Ultimately, the defendant's "burden is to show 'that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.'" *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 687).

"To satisfy the prejudice prong under *Strickland*, a defendant must show 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Saesee v. McDonald*, 725 F.3d 1045, 1048 (9th Cir. 2013) (quoting *Strickland*, 466 U.S. at 694). "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id.* (quoting *Strickland*, 466 U.S. at 694).

The court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant[.]" *Strickland*, 466 U.S. at 697. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.*

## A. Yoruba Interpreter

Olawoye is a citizen and national of Nigeria and speaks Yoruba as his native language. Olawoye is "fluent in English as a secondary language" and "is also familiar with both spoken and written Chinese." PSR, at 16. Olawoye argues that Roloff was ineffective for failing to seek out and retain the services of a Yoruba interpreter and claims that this failure resulted in a continuing inability to communicate. As a consequence, Olawoye alleges that Roloff lacked a clear understanding of the conspiracy or Olawoye's role and place within it.

The Government has sought and submitted a declaration from Roloff in support of its response to Olawoye's motion. ECF No. 342. In his declaration, Roloff says that "it was initially difficult to understand [Olawoye's] pronunciation of the English language due to his accent," but that he was able to quickly adapt and fully understand Olawoye. Roloff affirms that:

> I had an extensive amount of contact with Mr. Olawoye throughout my representation of him, including visiting him virtually every week and taking numerous phone calls from him in the interim. Mr. Olawoye was very involved in his case and he communicated with me extensively about all of the issues in the case. Throughout that time, as I became familiar with his speech patterns, I was not having difficulty understanding his conversations with me. Furthermore, he never indicated that he had any difficulty whatsoever understanding my communications with him. . . . Therefore, I did not feel the assistance of a Yoruba interpreter was needed.

Roloff Decl.[3]

At the time of sentencing, and in his sentencing letter, Roloff argued the very issues Olawoye now raises concerning his role within the conspiracy and his relationship with his co-conspirators. This further demonstrates that Roloff was able to understand Olawoye and to communicate effectively with him. On this record, the Court cannot conclude that Roloff was ineffective for declining to retain a Yoruba interpreter.

---

[3] The Court engaged in an extended colloquy with Olawoye during sentencing, during which time the Court observed that Olawoye was able to both understand and communicate clearly and effectively in English.

**B. Minor Role Adjustment**

Olawoye contends that Roloff failed to adequately argue for a minor role adjustment pursuant to U.S.S.G. § 3B1.2. Under § 3B1.2, a defendant's offense level may be reduced by between two and four levels to account for the defendant's minimal or minor role in the offense. This adjustment is meant to apply to defendants who are "substantially less culpable than the average participant in the criminal activity." U.S.S.G. § 3B1.2, cmt. (n.3(A)). The application of this adjustment is "based on the totality of the circumstances and involves a determination that is heavily dependent upon the facts of the particular case." U.S.S.G. § 3B1.2, cmt. (n.3(C)).

In this case, the Government sought an enhanced sentence for Olawoye's role as a leader or organizer within the conspiracy. As discussed in the PSR, this recommendation was based on numerous episodes in which Olawoye gave guidance or direction to other conspirators. Such conduct was inconsistent with a minor or minimal role adjustment.

In his declaration, Roloff explains that he believed a "strict" or "technical" application of the guidelines would result in an enhancement for a leadership role, but that such an enhancement was not warranted based on Olawoye's actual relationship to his co-conspirators. Roloff Decl. Under the circumstances, Roloff opted to pursue a strategy of arguing against a role enhancement and further arguing that, even if such an enhancement did apply, the Court should compensate and adjust the sentence downward by applying the § 3553(a) factors. In support of that strategy, Roloff sought and presented a psychological assessment of Olawoye. Roloff also argued that the conspiracy's internal dynamics were driven, at least in part, by African cultural factors which placed Olawoye on a lower level than his co-conspirators, despite the degree and nature of Olawoye's conduct in the course of the scheme.

These are precisely the sort of tactical and strategic considerations and decisions that *Strickland* identified as deserving of respect and deference when assessing a claim of ineffective assistance. Roloff made a calculated and considered judgment based on his experience as a defense attorney and his review of the Government's evidence. On this record and under these circumstances, the Court cannot conclude that Roloff was ineffective for declining to pursue a minor or minimal role adjustment.

## III.    Certificate of Appealability

A final order in a § 2255 proceeding may not be appealed unless a judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1)(B). A certificate of appealability may not issue unless "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). In *Slack v. McDaniel*, 529 U.S. 473 (2000), the Supreme Court explained that a certificate of appealability under § 2253(c) is warranted when a habeas prisoner makes "a demonstration that . . . includes a showing that reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Id.* at 483-84 (internal quotation marks and citation omitted). In this case, the Court concludes that Olawoye has failed to make the required showing and so declines to issue a certificate of appealability.

## CONCLUSION

For the reasons set forth above, Defendant's Motion under 28 U.S.C. § 2255, ECF No. 337, is DENIED. No evidentiary hearing is necessary because the allegations in Defendant's motion, when viewed against the record, do not give rise to a claim for relief. The Court declines to issue a certificate of appealability on the basis that Defendant has not made a substantial showing of the denial of a constitutional right pursuant to 28 U.S.C. § 2253(c)(2).

It is so ORDERED and DATED this 28 day of February, 2019.

ANN AIKEN
United States District Judge