IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

UNITED STATES OF AMERICA,

vs.

OLUWAMUYIWA ABOLAD OLAWOYE,

     Defendant.

Case No. 1:15-cr-00172-AA-5
**OPINION AND ORDER**

AIKEN, District Judge:

Now before the Court is defendant Oluwamuyiwa Olawoye's Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). Doc. 364. Specifically, defendant seeks a reduction of his sentence to time served. Defendant asserts that his underlying medical conditions, which include type 2 diabetes, obesity, high cholesterol, hepatitis A, and hypertension, coupled with unsafe conditions at the private Correctional Institute ("C.I.") D. Ray James, place him at a heightened risk for contracting and developing complications and long-term side effects associated

with the 2019 novel coronavirus ("COVID-19"). For the following reasons, the motion is GRANTED.

## BACKGROUND

In May 2015, Defendant was indicted, along with a number of co-conspirators, for his role in a wide-ranging fraud and identify theft scheme. This scheme involved the filing of fraudulent tax returns using stolen personal data and retaining subsequent tax refunds. The conspiracy resulted in an actual loss of millions of dollars. In July 2017, defendant entered into a negotiated plea agreement with the government. Pursuant to that agreement, he pleaded guilty to Conspiracy to Commit Mail and Wire Fraud (Count 1), Mail Fraud (Count 6), Wire Fraud (Count 11), and three counts of Aggravated Identity Theft (Counts 18, 19, and 24). In exchange, the government agreed to dismiss the remaining 21 counts of the indictment against him.

Defendant was sentenced to a total of 108 months in custody with a three-year term of supervised release to follow. Doc. 301. However, it is anticipated that defendant will be deported to Nigeria upon the completion of his in-custody sentence. Defendant also brought a motion to vacate or correct his sentence pursuant to 28 U.S.C. 2255. Doc. 337. The motion was ultimately denied by this Court. Do. 347. On June 25, 2020, defendant filed the present motion for compassionate release. The Court appointed the Federal Public Defender to represent defendant on this motion. Doc. 365. The Court then heard oral argument in this matter on July 31, 2020 and took the matter under advisement. Doc. 382.

/ / /

## LEGAL STANDARD

A district court generally "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see Dillon v. United States*, 560 U.S. 817, 824–25 (2010). Compassionate release under 18 U.S.C. § 3582(c)(1)(A) provides an exception in rare cases. As amended by the First Step Act, 18 U.S.C. § 3582(c)(1)(A) authorizes courts to modify terms of imprisonment as follows:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction; [. . .]
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A).

The relevant policy statement for sentence reductions under the compassionate release statute is found in the U.S. Sentencing Guidelines, § 1B1.13. The policy statement identifies several "extraordinary and compelling reasons," U.S.S.G. § 1B1.13(1)(A) & cmt. 1, requires a finding that the defendant does not pose a danger to others or the community under the factors provided in 18 U.S.C. § 3142(g), *id.* § 1B1.13(2), and observes that "[t]he court is in a unique position to determine whether the circumstances warrant a reduction . . . after considering the factors set

forth in [§ 3553(a)] and the criterial set forth in this policy statement, such as . . . whether the defendant is a danger," *id.* § 1B1.13 cmt. 4.

Defendant bears the burden to establish that he satisfied the procedural prerequisites for judicial review and compelling and extraordinary reasons to justify compassionate release.  18 U.S.C. § 3582(c)(1)(A).

## DISCUSSION

Under § 3582(c)(1)(A), a court may rule on a motion filed by the inmate after she "has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on [her] behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." However, "[i]t is axiomatic that one need not exhaust administrative remedies that would be futile or impossible to exhaust." *Singh v. Ashcroft*, 362 F.3d 1164, 1169 (9th Cir. 2004)

Here, defendant argues that he is unable to exhaust this administrative requirement as he is held in a non-BOP facility.  He notes that there is no appropriate authority at C.I. D. Ray James to whom a request could be made § 3582(c).  The Court notes that the government did not respond to any arguments regarding exhaustion in its briefing.  The Court "can envision no situation more futile than being required to petition to a BOP warden who does not exist."  *United States v. Arreola-Bretado*, 2020 WL 2535049, at *2 (S.D. Cal. May 15, 2020)   Accordingly, this motion is now properly before the Court.

Page 4 – OPINION AND ORDER

The remaining questions for the Court are: (1) whether defendant has presented extraordinary and compelling reasons for a sentence reduction considering the § 3553(a) sentencing factors, and (2) whether a reduction will be consistent with applicable policy statements from the Sentencing Commission, particularly, whether defendant is a danger under the § 3142(g) factors.  The Court will assess each of these prongs in turn.

## I.      *Extraordinary and Compelling Circumstances*

Defendant argues that his preexisting medical conditions, which include type 2 diabetes, obesity, high cholesterol, hypertension, and hepatitis A place him at a heightened risk of contracting and developing complications associated with COVID-19 infection.  These risks are exacerbated by defendant's placement at C.I. D. Ray James, which has seen exponential growth in positive COVID-19 tests in recent weeks.  https://www.bop.gov/coronavirus/ (last accessed August 5, 2020).  Moreover, as the government has decided not to renew its current contract with C.I. D. Ray James, the facility is set to shut down on September 30, 2020.  All inmates will be transported to new facilities, which defendant argues will put him at further risk for exposure to the virus.  Indeed, the government reported that defendant has been designated to Moshannon Valley Correctional Institution.

Further, defendant argues that as a result of the outbreak, that the facility's capacities are strained, and it is ill-equipped to provide care for his current conditions as he is dependent on the same staff who are treating coronavirus patients for needed insulin.  The government does not seem to argue that defendant has failed to show

that his current medical conditions coupled with the threat of COVID-19 can amount to extraordinary and compelling reasons. Indeed, it notes that these "condition[s] may satisfy the standard of 'extraordinary and compelling reasons." Gov't Resp. to Def's Mot. for Compassionate Release at 6. However, the government does briefly mention that "defendant's medical conditions are being managed while he is in BOP custody" which means he is not heightened risk for complications from COVID-19. *Id*.

A.    *Circumstances*

Section 1B1.13 of the U.S. Sentencing Guidelines identifies four categories of extraordinary and compelling reasons. *See* U.S.S.G. § 1B1.13 cmt. n. 1(A)-(D). Relevant here, § 1B1.13 provides that extraordinary and compelling reasons exist, *inter alia*, when "the defendant is suffering from a serious physical or medical condition, that substantially diminishes the ability of the defendant to provide selfcare within the environment of a correctional facility and from which he or she is not expected to recover" and in circumstances "other than, or in combination with" the other three categories. U.S.S.G. § 1B1.13 cmt. n.1(A)(ii), 1(D). The Court finds that these two categories of circumstances are present in this case.[1]

---

[1]    Although the fourth category of "extraordinary and compelling circumstances" from the U.S. Sentencing Guidelines encompasses other circumstances *as determined by the BOP director*, § 1B1.13 cmt. n. 1(D), the Court concludes, for the reasons stated in *United States v. Barber*, that it is not constrained under the current policy statement "by the BOP Director's determination of what constitutes extraordinary and compelling reasons for a sentence reduction." No. 6:18-cr-00446-AA-1, 2020 WL 2404679, at *6 (D. Or. May 12, 2020) (internal quotation marks omitted).

The Court acknowledges the global crisis caused by the 2019 novel Coronavirus ("COVID-19").  The pandemic has killed hundreds of thousands, sickened millions, and disrupted stability and security in the lives of billions.  As of the hearing on this motion, there have been more than 19 million confirmed cases worldwide.  *COVID-19 Dashboard by the Center for Systems and Engineering (CSSE) at John Hopkins University (JHU)*, JOHN HOPKINS UNIVERSITY OF MEDICINE, https://coronavirus.jhu.edu/map.html (last visited August 7, 2020).  More than 4.9 million of those cases have occurred in the United States.  *Id.*  Over 700,000 deaths around the world have attributed to the virus, over 160,000 of which have been reported in this country.  *Id.*  Further spread of infection and death is likely.  Across the world, government and private institutions alike were unprepared for this outbreak or its ramifications.  In the United States, "the President has declared a National Emergency due to the spread of the novel coronavirus and states and localities across the nation have implemented measures to stymie its rapid spread."  *United States v. Muniz*, No. 4:09-CR-0199-1, 2020 WL 1540325, at *1 (S.D. Tex. Mar. 30, 2020).

Prisoners are particularly vulnerable to infection due to the nature of their incarceration.  *Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities*, CENTERS FOR DISEASE CONTROL AND PREVENTION (Mar. 23, 2020), https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html    (last

visited July 1, 2020). Specifically, prisoners are unable to adequately follow social distancing and sanitary guidelines recommended to avoid the spread of infection.

These concerns are more acute in privately contracted institutions. Defendant submits a 2016 report from the Office of the Inspector General in the Department of Justice which found that "the BOP cannot as effectively ensure that contract prisons comply with contract requirements and BOP policies in these areas and that inmates in contract prisons receive *appropriate health and correctional services*." Review of the Federal Bureau of Prisons' Monitoring of Contract Prisons, Office of Inspector Gen., U.S. Dep't of Justice, iii (2016) (emphasis added).

Upon reviewing the documentation submitted, this Court finds that defendant has presented extraordinary and compelling reasons warranting his early release. His medical conditions are well-documented, and epidemiologic data indicates that COVID-19 infection may be more severe in patients with defendant's underlying conditions. *See People of Any Age With Underlying Medical Conditions*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. (last visited August 3, 2020) (listing obesity, type 2 diabetes, and hypertension as risk factors that may increase risk of severe illness from COVID-19 among people of any age).

Specifically, defendant's diabetes decreases his immune response due to fluctuating glucose levels and increases his likelihood of contracting the virus. Everything You Should Know About Coronavirus and Diabetes, Healthline, https://www.healthline.com/diabetesmine/coronavirus-and-diabetes. Further Those

suffering from diabetes also experience an elevated risk of severe symptoms, complications, inflammation, internal swelling, and a much higher death rate in those without diabetes. How COVID-19 Impacts People With Diabetes, American Diabetes Association, https://www.diabetes.org/coronavirus-covid19/how-coronavirus -impacts-people-with-diabetes.

Defendant also argues that C.I. D. Ray James has been on lockdown since the pandemic began.  Consequently, he has been confined to his cell between 21 and 23 hours per day, impairing his ability to engage in the regular exercise needed to control diabetes.

Even without the presence of other health conditions, obesity alone is the "most significant risk factor, after only older age, for being hospitalized with Covid-19." Roni Caryn Rabin, Obesity Linked to Severe Coronavirus Disease, Especially for Younger Patients, The NY TIMES (Apr. 17, 2020) https://www.nytimes.com/2020/04/16/health /coronavirus-obesityhigher-risk.html.  Further, the CDC has noted that, regardless of age, "having obesity, defined as a body mass index (BMI) of 30 or above, increases . . . risk of serve illness from COVID-19." *People of Any Age With Underlying Medical Conditions*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with- medical-conditions.html (last visited August 3, 2020).  Defendant has a body mass index of 31.9, which is classified as obese.

Courts have previously found "extraordinary and compelling circumstances" exist where inmates have suffered similar chronic medical conditions that put them

at an increased risk of complications associated with COVID-19 exposure. *See United States v. Ramsey*, 2020 WL 3798938 (E.D. Wis. July 7, 2020) (granting compassionate release to a 34-year-old defendant with type 2 diabetes, obesity, and hyperlipidemia); *United States v. Padilla-Rivas*, No. 3:14-cr-00082-SI (D. Or. June 29, 2020) (granting unopposed compassionate release to a 45-year-old defendant also housed at C.I. D. Ray James with diabetes, hypertension, and hyperlipidemia); *United States v. Lee*, 2020 WL 3422772 (E.D. Va. June 22, 2020) (granting compassionate release to a 46-year-old defendant with diabetes and hyperlipidemia); United States v. Joseph, No. 18-CR-156, 2020 WL 3270885, at *1 (E.D. Wis. June 17, 2020) (granting compassionate release to a 51-year-old insulin-dependent defendant with diabetes and various other conditions, who had only served half her sentence); *United States v. Smith*, 2020 WL 3027197 (C.D. Ill. June 5, 2020) (granting compassionate release to a 37- year-old defendant with diabetes and obesity, among other health conditions).

Defendant's ability to provide self-care within the environment of the correctional facility is similarly limited by the complexity of his medical needs. As noted above, defendant in unable to isolate and must come into regular contact with medical staff who are charged with caring for COVID-19 patients in order receive needed insulin. Any preventative measures that defendant might normally take on his own (for example, exercise) are restricted by the facility's current lockdown status.

Considering the above information and circumstances of defendant's confinement, the Court concludes that defendant is suffering from chronic and serious

medical conditions which significantly diminish his ability to provide self-care in the environment where he is held. *See United States v. Colvin*, 2020 WL 1613943, at *4 (D. Conn. Apr. 2, 2020).

### B.    *§ 3553(a) Factors*

Next, the Court must consider the factors provided in 18 U.S.C. § 3553(a). In imposing a sentence which is "sufficient, but not greater than necessary," a court contemplates, among other things, the nature and circumstances of the offense, the history and characteristics of the defendant, community safety, the kinds of sentences available, the need to avoid unwanted disparities in sentencing, and all other obligations of sentencing including punishment, deterrence, and rehabilitation. 18 U.S.C. § 3553(a). Here, the Court is persuaded that the applicable § 3553(a) factors support defendant's request for compassionate release.

The Court initially notes that defendant had no previous history of criminal activity prior to the present offenses. The Court acknowledges that defendant's underlying offenses are serious and that the circumstances surrounding those offenses were a major factor in the 108-month sentence originally imposed. However, the Court did not intend that sentence to "include incurring a great and unforeseen risk of severe illness or death brought on by a global pandemic." *United States v. Hanson*, 2020 WL 3605845, at *5 (D. Or. July 2, 2020) (internal citations and quotation marks omitted).

The Court is also very concerned with manner in which defendant has been confined since he was sentenced. At sentencing, the Court recommended that

defendant participate in treatment, specifically the RDAP program, as well as educational and employment programming while in custody. Unfortunately, he has had little access to those services. Instead, at the private institution where he is held, non-citizen inmates are segregated from citizen inmates, and given far less opportunity to participate in rehabilitative programming as well poor health services. Emma Kaufman, Segregation by Citizenship, 132 HARVARD L. REV. 1379, 1409-17 (2019). The sentence defendant has served has undoubtedly been harsher than the one originally contemplated at the time of sentencing.

Importantly, defendant has been held in custody since May 13, 2015. Accordingly, he has served approximately 67% of his sentence. With 30 months remaining to be served, defendant is scheduled to be released on January 11, 2023. Further, because defendant has an immigration hold, he will not receive the benefit of a placement in community corrections for which he would eligible on January 11, 2022. Also significant to the Court's analysis is that while defendant will be deported back to Nigeria upon release, he will likely first serve additional time in administrative detention before that removal occurs.

The government argues that compassionate release would not adequately reflect the seriousness of the offenses which defendant committed. Moreover, it argues that many of the ill-gotten gains from this conspiracy were funneled to Nigeria. And, if released, the government envisions that defendant will be free to spend the proceeds of the scheme with his co-conspirators in Nigeria. However, the Court is unconvinced, nor has the government offered evidence, that defendant will

have access to any funds gained by the conspiracy once he returns to Nigeria. Additionally, defendant has consistently argued throughout these proceedings that he was ill-treated and poorly regarded by other leading members of the conspiracy.

Defendant has indisputably been model inmate while in custody, without a single infraction on his record. He has been assessed the lowest level of risk by the institution where he has been held, and defendant has engaged with the limited resources available to him which included earning his GED.

The Court finds that the amount of time defendant has already served, when considering his current characteristics and condition, deters criminal conduct, protects the public, and adequately provides accountability for his actions. 18 U.S.C. § 3553(a)(2).

## II.  *Dangerousness*

Finally, the Court considers whether defendant presents a danger to the community. U.S.S.G. § 1B1.13(2). Under § 3142(g), a court must consider the following factors in determining whether conditions of release will reasonably assure the safety of any other person and the community: (1) the nature and circumstances of the offense charged, (2) the weight of the evidence against the person, (3) the history and characteristics of the person, and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g).

The government suggests that defendant's release would pose a danger to the community, as defendant would not be under federal supervision once he is removed

to Nigeria and he would be free to return to same fraud he committed previously. This argument is unavailing for several reasons. First, whether defendant is released now or in 2023, he would not be under federal supervision. The government does not offer any specific arguments as to why defendant would be more or less likely to recidivate if he were to serve the rest of this term. The Court has heard from the defendant and finds his statements of remorse and assurances that he will not engage in this type of activity in future to be credible. The Court also considers as significant that he has been assessed at the lowest level of risk by his current institution.

While nonviolent in nature, the Court agrees that the type of activity in which the defendant previously was harmful. However, in considering the individual history and characteristics of this defendant, the Court finds that compassionate release now with impending removal to Nigeria would not pose a serious danger to the community.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

Page 14 – OPINION AND ORDER

## CONCLUSION

The Court finds that defendant has established extraordinary and compelling reasons to warrant a reduction of defendant's sentence under 18 U.S.C. § 3582(c)(1)(A)(i). Defendant's motion (doc. 364) is therefore GRANTED. The Court anticipates that defendant will be taken into custody by U.S. Immigration and Customs Enforcement for removal proceedings. The parties shall contact the Court if further proceedings regarding release are necessary.

IT IS SO ORDERED.

Dated this __7th__ day of August 2020.


_____/s/Ann Aiken_____

Ann Aiken
United States District Judge